**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                                    )
TRUSTEES OF BOSTON UNIVERSITY,      )
                                    )
                Plaintiff,          )
                                    )        Civil Action
        v.                          )        No. 13-12335-PBS
                                    )
KINGBRIGHT ELECTRIC CO., LTD., and  )
KINGBRIGHT CORP.,                   )
                                    )
                Defendants.         )
_____)
```

**MEMORANDUM AND ORDER**

December 17, 2019

Saris, C.J.

This case is one in a series of patent infringement cases brought by the Trustees of Boston University ("Boston University") against manufacturers and users of LED technology that allegedly infringes U.S. Patent Number 5,686,738 (the "'738 Patent"). Following an extended stay of proceedings, Kingbright Electric Co., Ltd. and Kingbright Corp. (together, "Kingbright") have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) or, in the alternative, summary judgment pursuant to Federal Rule of Civil Procedure 56. Kingbright contends that Boston University's claims are barred because the Federal Circuit has held that the '738 Patent is

invalid for lack of enablement in a parallel case against its principal supplier of LED chips, Epistar Corp. ("Epistar").

After hearing, the Court **ALLOWS IN PART** and **DENIES IN PART** Kingbright's motion. (Dkt. No. 82).

## BACKGROUND

### I. Facts

Boston University is a major research university located in Boston, Massachusetts and the owner of the '738 Patent. The '738 Patent relates to the preparation of monocrystalline gallium nitride films via molecular beam epitaxy. Stated differently, the '738 Patent covers a process used in creating semiconductors for LED lights. The '738 Patent expired on November 11, 2014.

Kingbright is a Taiwanese company that designs and manufactures LED packages. Prior to 2015, Kingbright sold LED packages in the United States through a U.S. based subsidiary. Boston University alleges that the LED packages manufactured and sold by Kingbright incorporated LED chips that infringed the '738 Patent. At all relevant times, Kingbright purchased its LED chips from three different manufacturers: Epistar, Cree, Inc. ("Cree"), and Tekcore.

### II. Procedural History

Boston University originally sued Kingbright on September 20, 2013. It amended its complaint on October 30, 2013. However, the Court stayed the case in November 2014 in favor of an

earlier filed case between Boston University and Epistar involving the same patent and the same Epistar chips (the "Epistar Action").

While the case was stayed, litigation continued in the Epistar Action.[1] In November 2015, a jury found in the Epistar Action that the '738 Patent was valid and that Epistar had infringed upon it. After trial, Epistar moved for judgment as a matter of law on the grounds that the patent failed to meet the enabling requirement of 35 U.S.C. § 112. The Court denied the motion, and Epistar appealed. On appeal, the Federal Circuit ruled as a matter of law that the '738 Patent was invalid for lack of enablement. On remand, Boston University moved to affirm the jury verdict notwithstanding the Federal Circuit's ruling, but the Court denied that motion in July 2019. Final judgment entered in the Epistar Action on December 16, 2019.

Once the Federal Circuit's mandate issued in the Epistar Action, the Court reopened this case. On April 18, 2019, in light of the Federal Circuit's ruling in the Epistar Action, Kingbright moved for judgment on the pleadings pursuant to

---

[1] In the Epistar Action, Boston University also sued Everlight Electronics Co., Ltd. and Everlight Americas, Inc. (together, "Everlight") and Lite-On Inc., LiteOn Service USA, Inc., Lite-On Technology Corp., and LiteOn Trading USA, Inc. (together, "Lite-On"). Like Kingbright, Everlight and Lite-On were customers of Epistar. Everlight and Lite-On also prevailed against Boston University by virtue of the Federal Circuit's holding that the '738 Patent was invalid.

Federal Rule of Civil Procedure 12(c) or, in the alternative, on partial summary judgment pursuant to Federal Rules of Civil Procedure 12(d) and 56. Boston University opposed the motion, and the Court held a hearing on September 24, 2019.

## DISCUSSION

### I. Legal Standard

Under Rule 12(c), "after the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is a close procedural cousin to a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) as "these two types of motions are treated in much the same way." Kando v. Rhode Island State Board of Elections, 880 F.3d 53, 58 (1st Cir. 2018). The Court will "take the well-pleaded facts and the reasonable inferences therefrom in the light most favorable to the nonmovant." Id. Judgment on the pleadings is appropriate only when "the properly considered facts conclusively establish that the movant is entitled to the relief sought." Id. The Court may also take judicial notice of earlier decisions in the public record. Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013).

If the movant draws upon factual allegations outside of the pleadings by submitting extrinsic documents to support its argument and the Court does not exclude them, then the Court

4

converts the 12(c) motion into a motion for summary judgment under Rules 12(d) and 56. See Miller v. Sunapee Difference, LLC, 918 F.3d 172, 176 (1st Cir. 2019). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists where the evidence "is such that a reasonable jury could resolve the point in the favor of the non-moving party." Cherkaoui v. City of Quincy, 877 F.3d 14, 23-24 (1st Cir. 2017). A material fact is one with the "potential of changing a case's outcome." Doe v. Trs. of Bos. Coll., 892 F.3d 67, 79 (1st Cir. 2018). "The court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in [its] favor." Carlson v. Univ. of New England, 899 F.3d 36, 43 (1st Cir. 2018).

## II. Kessler Doctrine and Claim Preclusion

The Kessler doctrine "bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee because of invalidity or noninfringement of the patent." MGA, Inc. v. Gen. Motors Corp., 827 F.2d 729, 734 (Fed. Cir. 1987). The doctrine originated in the Supreme Court's decision in Kessler v. Eldred, 206 U.S. 285, 288 (1907), which explained that the judgment in the first case "settled finally and everywhere . . . that Kessler had the right to manufacture,

5

use and sell" the product in question. By bringing a suit against a customer, the patent holder violated the seller's rights: "No one wishes to buy anything if with it he must buy a law suit." Id. at 289. The Federal Circuit since has recognized that a customer can invoke the Kessler doctrine as a defense because it creates a "limited trade right" that attaches to the underlying product. See SpeedTrack, Inc. v. Office Depot, Inc., 791 F.3d 1317, 1326 (Fed. Cir. 2015). On this basis, Kingbright contends it is entitled to judgment on the pleadings to the extent Boston University's claims are based on LED packages incorporating Epistar chips. It is undisputed that the same Epistar chips at issue here were also the subject of the Epistar Action. Instead, Boston University counters that the Kessler doctrine is inapplicable for two legal reasons.

First, Boston University claims that the Kessler doctrine only applies in instances where the manufacturer prevails in the prior suit on the basis of noninfringement, not invalidity. The Kessler doctrine is therefore inapplicable because Epistar prevailed against Boston University on the basis that the '738 Patent was invalid for lack of enablement. Yet there is scant support for this distinction in the caselaw. In MGA, Inc. v. General Motors Corp., the Federal Circuit expressly stated the Kessler doctrine applies when the manufacturer prevails on either "invalidity or noninfringement of the patent." 827 F.2d

at 734; see also SpeedTrack, 791 F.3d at 1326 (quoting same language from MGA). Boston University argues this language is dicta because the cases applying the Kessler doctrine all have involved noninfringement judgments. See Kessler, 206 U.S. at 285; SpeedTrack, 791 F.3d at 1320; Brain Life, LLC v. Elekta Inc., 746 F.3d 1045, 1052 (Fed. Cir. 2014); MGA, 827 F.2d at 734. Yet this is not enough to overcome the clear, uncontradicted statement adopted by two Federal Circuit opinions that the Kessler doctrine covers invalidity judgments. And, in fact, the Kessler doctrine has been applied in (admittedly older) cases where the manufacturer secured an invalidity judgment. See, e.g., Zoomar, Inc. v. Paillard Prods., Inc., 258 F.2d 527 (2d Cir. 1958); Stoehrer & Pratt Dodgem Corp. v. Glen Echo Park Co., 15 F.2d 558 (4th Cir. 1926); see also In re PersonalWeb Techs., LLC, et al. Patent Litig., No. 18-MD-02834-BLF, 2019 WL 1455332, at \*15 (N.D. Cal. Apr. 2, 2019) (rejecting argument that Kessler doctrine applies only to noninfringement judgments). The Court can discern no reason to distinguish between invalidity and noninfringement in the application of the Kessler doctrine.

Second, Boston University claims the Kessler doctrine only bars claims in a subsequent action that are based on conduct after the judgment in the prior action. Here, the claims against Kingbright are based on conduct prior to November 11, 2014, when

the '738 Patent expired. Because the Federal Circuit did not hold that the '738 Patent was invalid until July 2018, nearly four years after the conduct at issue in this case, Boston University argues the Kessler doctrine is inapplicable. Kingbright responds that the Kessler doctrine stands for the broader principle that once a product -- here, the Epistar chips -- is determined not to infringe a patent, it is "settled finally and everywhere . . . that [the seller] has the right to manufacture, use and sell [the product]." Kessler, 206 U.S. at 288 (emphasis added).

    This is a closer question because the Federal Circuit caselaw points in different directions. Boston University relies on SimpleAir, Inc. v. Google LLC, 884 F.3d 1160, 1170 (Fed. Cir. 2018) (citation omitted), where the Federal Circuit explained that the Kessler doctrine "fills a particular temporal gap between preclusion doctrines, it does not displace them." Further, the Federal Circuit stated that it has not "applied the Kessler doctrine to bar a broader set of rights than would be barred by claim preclusion" and it has not "applied the Kessler doctrine to activity predating the earlier judgment." Id. Yet, as Kingbright observes, the latter statements are seemingly at odds with the Federal Circuit's earlier decision in SpeedTrack, Inc. v. Office Depot, Inc., where it held that the Kessler doctrine fully barred patent claims based on conduct that both

8

predated and post-dated the judgment in a prior action involving the same product. 791 F.3d at 1321, 1324, 1329.

SpeedTrack is more consistent with the accepted purpose of the Kessler doctrine, which is to preclude re-litigation of claims involving the same patent and same underlying product. See Brain Life, 746 F.3d at 1056 ("[T]he Court granted Kessler a limited trade right to continue producing, using, and selling the electric lighters . . . and to do so without fear of allegations of infringement by Eldred -even when the acts of infringement occurred post-final judgment . . . ."); SpeedTrack, 791 F.3d at 1326 ("Kessler sought to prevent patent owners from undermining adverse final judgments by relitigating infringement claims against customers who use the product at issue."). The Court also is skeptical of the idea that the Kessler doctrine only "fills a particular temporal gap between preclusion doctrines," SimpleAir, 884 F.3d at 1170, because "the [Supreme] Court did not rely on traditional notions of claim or issue preclusion in crafting [the doctrine]," Brain Life, 746 F.3d at 1056. But the Court does not need to resolve this particular discrepancy in the caselaw because, even if the Kessler doctrine does not apply, Boston University's claims are barred by claim preclusion.

Under the doctrine of claim preclusion, "a judgment 'on the merits' in a prior suit involving the same parties or their

9

privies bars a second suit based on the same cause of action." SimpleAir, 884 F.3d at 1165 (quoting Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 326 (1955)). There is no dispute that this case has been brought by the same patent holder and involves the same patent and product as the Epistar Action. In a patent case, this is strong evidence that claim preclusion applies. See Senju Pharm. Co. v. Apotex Inc., 746 F.3d 1344, 1349 (Fed. Cir. 2014) ("Claim preclusion will generally apply when a patentee seeks to assert the same patent against the same party and the same subject matter."). Nevertheless, Boston University protests that its cause of action here is distinct from the Epistar Action because it intends to assert different patent claims than it did previously.[2] This is no argument because "claim preclusion bars both claims that were brought as well as those that could have been brought." Brain Life, 746 F.3d at 1053. Boston University also argues that Kingbright has not established that it is in privity with Epistar. It is undisputed, however, that (1) Kingbright was a customer of Epistar and (2) Epistar has indemnified Kingbright in this litigation. Indeed, the purpose of staying this case in favor of

---

[2] Boston University claims it will assert Claims 11 and 12 of the '738 Patent rather than Claim 19. However, the Amended Complaint does not specify which patent claims were infringed and Boston University's preliminary infringement contentions only identify Claims 1, 2, 7, 9, 10, 18, and 19.

10

the Epistar Action was to streamline proceedings because the same issues and claims were being raised in multiple cases. Under First Circuit law, which provides the legal framework for determining privity, Kingbright and Epistar are closely related so that claim preclusion does apply. See <u>Airframe Sys., Inc. v. Raytheon Co.</u>, 601 F.3d 9, 18 (1st Cir. 2010).

Accordingly, the Boston University's claims in this case are barred to the extent they are based on LED packages incorporating Epistar chips.

### III. <u>Remaining Claims</u>

Although the Court will dismiss Boston University's claims against Kingbright based on LED packages that incorporate Epistar chips, that does not fully resolve this case. Kingbright admits that it also sold LED packages during the relevant period that incorporate chips from two other manufacturers, Cree and Tekcore. Neither the <u>Kessler</u> Doctrine nor claim preclusion provide a basis for dismissing Boston University's claims related to these chips. And Kingbright makes only a half-hearted attempt to argue why these claims should be dismissed.

Kingbright claims it is entitled to summary judgment with respect to the Cree chips because Cree licensed the '738 Patent directly from Boston University. To this end, Kingbright has submitted excerpts of trial testimony by representatives of both Cree and Boston University from the Epistar Action as well as a

copy of the license agreement that was admitted into evidence in the Epistar Action. There is no dispute that a license agreement existed for some period of time, but the submitted agreement is dated March 26, 2001 and Boston University's representative testified in the Epistar Action that it "took back the exclusive license from Cree" sometime in 2012 or 2013. Dkt. No. 82-4 at 9. According to Kingbright the "liability period" in this case is between September 20, 2013 and November 11, 2014. While it may be that Cree retained a non-exclusive license from Boston University during that period, it is not clear from the record before the Court. The Court therefore cannot grant summary judgment with respect to the Cree chips. As for the Tekcore chips, Kingbright claims that the number of chips at issue is so small that the total amount in controversy is less than $350. While that may be true, it does not provide a legal basis for dismissing those claims. Accordingly, Boston University's claims related to non-Epistar chips survive Kingbright's motion.[3]

---

[3] Ultimately, these issues may be moot. Boston University has stated that it does not intend to pursue infringement claims against Kingbright based on LED packages incorporating Cree chips. Likewise, claims based on the Tekcore chips may not be worth pursuing. Given the evidently small amount that is still at stake in this case once the Epistar chips are excluded, the Court urges the parties to settle the remaining claims rather than undertaking another lengthy (and potentially acrimonious) litigation.

## **ORDER**

For the foregoing reasons, Kingbright's motion for judgment on the pleadings or, in the alternative, summary judgment (Dkt. No. 82) is **ALLOWED IN PART** and **DENIED IN PART**. Boston University's claims against Kingbright based on LED packages incorporating Epistar chips are dismissed. Any claims against Kingbright based on LED packages incorporating chips from other manufacturers, however, are not dismissed. Boston University shall inform the Court within 30 days whether it intends to proceed on the remaining claims.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
Chief United States District Judge